IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Milliken & Company, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 7:10-2109-HMH |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Grupo Antolin Michigan, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Grupo Antolin Michigan, Inc.'s ("Grupo") motion to dismiss or, in the alternative, to transfer the case to the United States District Court for the Eastern District of Michigan. For the reasons stated below, the court denies the motion.

## I. Factual and Procedural Background

Milliken & Company ("Milliken") is a South Carolina corporation with its principal place of business in Spartanburg, South Carolina. (Am. Compl. ¶ 1.) Milliken manufactured a product, Halo™, which is "a natural, fiberglass-free base for automotive headliners" (hereinafter "Headliners") and sold it to Grupo for use in automobile components. (Pl. Mem. Opp'n Mot. Dismiss 3.) Grupo is a Michigan corporation with its principal place of business in Auburn Hills, Michigan. (Def. Mem. Supp. Mot. Dismiss 2.) Grupo is a "tier-1 supplier of automobile interior components to the Original Equipment Manufacturers in the automotive industry." (Id.)

Two agreements were executed by Milliken and Grupo. On July 10, 2008, Milliken and Grupo agreed to the Grupo Antolin Suppliers' Guide: GP-01 ("Suppliers' Guide") and on July 28, 2010, the parties executed the Grupo Antolin North American Supplier Procedure Manual

1

("Supplier Procedure Manual"). (Id. 4-5.) The two agreements as amended by Milliken contain a South Carolina forum selection clause and choice of law provision, which Milliken alleges is valid. (Id. Ex. C (Suppliers' Guide) & Ex. D (Supplier Procedure Manual).)

The parties' dispute arises around the Headliners. Grupo placed orders for Headliners beginning in "November 2008 to early 2010." (Def. Mem. Supp. Mot. Dismiss Ex. A (Niki Byanski ("Byanski") Aff. ¶¶ 4-5).) The orders were placed pursuant to four purchase orders. (Id. 2.) The purchase orders contain a Michigan forum selection clause and choice of law provision, which Grupo alleges is valid. (Id. Ex. A (Byanski Aff. Ex. 1 (Purchase Order)).) Grupo alleges that Milliken's Headliners were defective. (Id. 3.) Milliken argues that the quality problems with the product arose when Grupo decided to order narrower Headliners in September 2009. (Pl. Mem. Opp'n Mot. Dismiss 7-8.)

Milliken filed the instant lawsuit on April 20, 2010. Milliken served Grupo on August 3, 2010, after settlement negotiations allegedly failed and Milliken learned that Grupo had filed a lawsuit in the United States District Court for the Eastern District of Michigan on August 2, 2010. On September 2, 2010, Grupo filed the instant motion to dismiss or, in the alternative, to transfer the case to the Eastern District of Michigan. Milliken filed its memorandum in opposition on September 20, 2010. On September 27, 2010, Grupo filed its reply. This matter is now ripe for consideration.

## II. Discussion of the Law

### A. Motion to Dismiss Pursuant to the First-to-File Rule

Grupo moves to dismiss the instant action arguing that the instant action "is an improper anticipatory lawsuit and special circumstances apply to overcome the first-to-file rule." (Def. Mem. Supp. Mot. Dismiss 6.) This rule states "as a principle of sound judicial administration, the first suit [filed] should have priority, absent the showing of a balance of convenience in favor of the second action." Nall v. Piper, No. 90-2479, 1991 WL 192141, at *2 (4th Cir. Sept. 26, 1991) (unpublished) (quoting Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n.2 (4th Cir. 1974)).

> The first-to-file rule states that in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it. The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources.

Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (internal quotation marks and citations omitted). "The Fourth Circuit has yet to recognize a 'special circumstances' exception to the first to file rule." Nexsen Pruet, LLC v. Westport Ins. Corp., C/A No. 3:10-895-JFA, 2010 WL 3169378, at *2 (D.S.C. Aug. 5, 2010) (unpublished). However, some courts have concluded that "even if a court finds the first-filed rule applicable, it may still make the discretionary determination that the rule should be ignored as a result of 'special circumstances,' such as forum shopping, anticipatory filing, or bad faith filing." Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003). "If a court determines that the suit first filed with it should be disregarded in favor of the later-filed suit, the court may stay its proceedings, dismiss the case entirely, or transfer the case to its sister court." Id.

3

The court finds that for purposes of the first-to-file rule, the instant action and the Michigan action are duplicative and the instant action was filed first. However, Grupo argues that the first-to-file rule should not apply because Milliken filed the South Carolina action in bad faith in an effort to secure a South Carolina forum.

Specifically, Grupo submits that

> Milliken filed this suit on April 20, 2010, in the midst of settlement discussions between the parties regarding the dispute, without the knowledge of Grupo Antolin. Milliken's anticipatory filing of the South Carolina Action qualifies as an exception to the first-to-file rule and, therefore, this action should not be afforded priority over the Michigan Action.

(Def. Mem. Supp. Mot. Dismiss 9.) Citing Nutrition & Fitness, 264 F. Supp. 2d at 360, Grupo argues that Milliken's four-month delay in serving the instant suit is evidence of Milliken's bad faith and anticipatory filing. In Nutrition & Fitness, the defendant alleged that the plaintiff in a trademark infringement action "impermissibly and unfairly attempted to manipulate the forum of this lawsuit by filing the instant action, waiting until [defendant] learned of the potentially infringing products and filed suit, then serving the North Carolina action on [defendant] the day after [plaintiff] was served with the Oklahoma action." Id. at 360. The district court declined to apply the first-filed rule because "it is impossible for the Court to ignore the fact that [plaintiff] waited until it was served with the Oklahoma action and then served [defendant] with the North Carolina action *one day later*. Such behavior screams of forum shopping." Id. at 361. Further, the court found that the fact that plaintiff "did not bring the true dispute between the parties–the trademark dispute–into court speaks volumes. Rather than initially filing a declaratory judgment action with this Court to determine the trademark issues, [plaintiff] chose to file essentially its counterclaim against [defendant] as the original lawsuit in the instant action." Id.

4

Milliken responds that it did not act in bad faith. Milliken submits that it believed settlement negotiations had failed as of April 19, 2010. On April 1, 2010, Grupo sent a letter to Milliken stating that if certain actions were not taken Grupo would "have no choice but to seek legal actions against Milliken Automotive in order to ensure continued production shipments as laid out in its contracts with Grupo Antolin companies. As I am sure you are quite aware, many such suits have been filed . . . in the local courts with considerable success." (Pl. Mem. Opp'n Mot. Dismiss Ex. K (April 1, 2010 Letter).) According to Milliken, the parties continued to engage in negotiations following the April 1, 2010 letter. However, Milliken alleges that negotiations stalled as evidenced by an email sent on April 19, 2010 to Jeff Stafford ("Stafford") at Milliken from Byanski of Grupo. The email stated that it was "very clear" that the parties could not "come to any sort of an agreement." (Id. Ex. M (Byanski Email).) Byanski suggested that the parties enter into binding arbitration. (Id. Ex. M (Byanski 4/19/10 Email).) Milliken filed the instant suit on April 20, 2010.

However, on the afternoon of April 20th, Byanski sent an email presenting a new proposal "with the hopes we can reach an agreement." (Id. Ex. N (Byanski 4/20/10 Email).) Milliken argues that it did not serve the instant suit on Grupo because the parties were making progress with settlement negotiations.

On April 23, 2010, Grupo agreed to pay $900,000.00 to Milliken. (Id. Ex. B (Stafford Decl. ¶ 12).) However, Milliken argues that it served the instant suit on Grupo after learning on August 2, 2010 that Grupo had filed a lawsuit in Michigan[1] seeking to recover $700,000.00 of

---

[1]Grupo filed a complaint in the Eastern District of Michigan. The case, Grupo Antolin Michigan v. Milliken & Company, C.A. No. 2:10-13045, has been stayed pending the outcome of this motion. (Pl. Mem. Opp'n Mot. Dismiss Ex. O (Order Staying Case).)

5

the $900,000.00. (Pl. Mem. Opp'n Mot. Dismiss Ex. B (Stafford Decl. ¶ 14).) Shortly thereafter, Milliken amended its complaint. Milliken alleges that it amended the complaint because the payment of $900,000.00 had not been made when the original complaint was filed. Milliken states that it filed and served the amended complaint "on August 11, to conform the pleadings to the developments that had occurred since its original Complaint and to encompass all claims that Milliken had against Grupo." (Id. 13.)

The court finds that Milliken did not act in bad faith in filing the lawsuit on April 20, 2010. Milliken's filing of the instant suit with knowledge that Grupo was planning to file suit in Michigan is not evidence of bad faith or an improper "race to the courthouse." See Nexsen Pruet, LLC v. Westport Ins. Corp., C/A No. 3:10-895-JFA, 2010 WL 3169378 at **1-2 (D.S.C. Aug. 5, 2010) (unpublished). As the undisputed evidence indicates, as of April 19, 2010, the settlement negotiations between the parties were not progressing and Grupo was threatening litigation. Further, Milliken did not act in bad faith in declining to serve the instant suit on Grupo while settlement discussions continued. Unlike in Nutrition & Fitness, Grupo presented Milliken with a new offer after the complaint was filed in the instant suit that resulted in the payment of $900,000.00 to Milliken. Irrespective of Grupo's argument that the payment did not resolve the parties dispute, Milliken would have been ill-advised to serve the instant suit under these circumstances.

> Some evidence that a first-filed case was filed for the purpose of forum shopping or in bad faith is necessary before courts find it was improperly anticipatory, and therefor[e] warrant[s] a departure from the first-filed rule. Of course, the mere delaying of notice and service of a complaint in the hopes of avoiding litigation through settlement does not constitute bad faith or improper forum shopping where both parties had a reasonable apprehension that filing suit was imminent.

Zokaites v. Land-Cellular Corp., 424 F. Supp. 2d 824, 838 (W.D. Pa. 2006) (internal quotation marks and citations omitted). Both Milliken and Grupo had a "reasonable apprehension that filing suit was imminent." Id. Based on the foregoing, the court denies Grupo's motion to dismiss on the basis that the first-filed rule should not apply because Milliken acted in bad faith.

### B. Motion to Transfer

In the alternative, Grupo moves to transfer the case to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A transfer of venue is inappropriate if the transfer merely shifts the burdens of litigation from one party to the other. See DeLay & Daniels, Inc. v. Allen M. Campbell Co., Gen. Contractors, Inc., 71 F.R.D. 368, 372 (D.S.C. 1976). In this case, Milliken argues that the forum selection clause is a significant factor weighing in favor of denying Grupo's motion to transfer venue. In addition, Grupo's purchase orders contain a foreign selection clause, which Grupo argues is a significant factor weighing in favor of transferring this case to the Eastern District of Michigan. A forum selection clause is considered in the § 1404(a) analysis. In Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22 (1988), the United States Supreme Court addressed the precise issue of how a motion to transfer under § 1404 interplays with a contractual forum selection clause. The Court in Stewart explained:

> Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the interest of justice. It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, whereas the

coordinate state rule might dictate the opposite result . . . . Congress has directed that multiple considerations govern transfer within the federal court system . . . .

487 U.S. at 30-31 (internal citations and quotation marks omitted). The Stewart Court noted that the "presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." Id. at 29. However, "forum selection clauses 'should receive neither dispositive consideration' nor 'no consideration . . . but rather the consideration for which Congress provided in § 1404(a).'" Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1258 (4th Cir. 1991) (quoting Stewart, 487 U.S. at 31). Based on the foregoing, the court must consider the factors listed above and the presence of a forum selection clause. Because the plaintiff in this case, Milliken, initiated this action in South Carolina, the burden is on Grupo to "make a clear cut showing that the balance of convenience in the interest of justice favor [sic] trial in the transferee forum." Joye v. First Commodity Corp. of Boston, 81 F.R.D. 118, 124 n.11 (D.S.C. 1978).

1. **Convenience of the Parties and Witnesses**

The first factor, the convenience of the parties and witnesses, favors neither South Carolina nor Michigan. Numerous potential witnesses live in each state. (Pl. Mem. Opp'n Mot. Dismiss Ex. A (Thompson Decl. ¶ 18).); (Def. Mem. Supp. Mot. Dismiss Ex. A (Byanski Aff. ¶¶ 17-20).) Further, Milliken's principal place of business is South Carolina, and Grupo's principal place of business is Michigan. (Am. Compl. ¶¶ 1-2.) Grupo argues that there are "numerous key third party witnesses" in Michigan. (Def. Reply 12.) Generally, "[t]he convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer venue." Samsung Elecs. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 718 (E.D. Va. 2005). Grupo has identified nine third-party witnesses from General Motors and an independent testing facility located in

Michigan. (Def. Mem. Supp. Mot. Dismiss 12 & Ex. A (Byanski Aff. ¶¶ 19-20).) However, Milliken has also identified five third-party witnesses. (Pl. Mem. Opp'n Mot. Dismiss Ex. A (Thompson Decl. ¶ 18).) Thus, while Grupo may have more non-party witnesses than Milliken, the difference is negligible. The court finds that Grupo has failed to show that Michigan is more convenient for the parties and would be less expensive. Transferring the case to Michigan based on this factor would merely shift the burden of litigation to Milliken. Based on the foregoing, this factor does not favor transferring the case to Michigan.

### 2. The Interests of Justice

There are numerous factors that the court may consider in weighing whether the interests of justice warrant a transfer, including "[t]he ease of access to sources of proof, the availability of compulsory process, the costs and practical problems of litigation, and the state of the respective trial calenders" of the districts being considered. Fairchild Semiconductor Corp. v. Nintendo Co., 810 F. Supp. 173, 175 (D.S.C. 1992). Further, the court must consider "public-interest factors of systemic integrity and fairness." Stewart Org., Inc., 487 U.S. at 30.

With respect to the evidence in the case, while each party has business records and other relevant evidence in each state, the Headliners that Grupo maintains were defective were manufactured in South Carolina. The issues in this case turn on whether the Headliners were defective and the critical evidence regarding the manufacturing process of the allegedly defective Headliners is located in Union, South Carolina. Grupo argues that "many of the boards at issue manufactured by Milliken are located in Michigan" and transporting these Headliners to South Carolina for trial would be burdensome. (Def. Mem. Supp. Mot. Dismiss 16.) Although it is unclear why Grupo would need to ship all of the allegedly defective Headliners to South Carolina

9

for trial, there is no evidence that this would dramatically increase the costs in this case. In addition, the jury may need to view Milliken's manufacturing process during a trial of this matter. The critical inquiry in this case is whether Milliken's manufacturing process caused defects in the Headliners or if Grupo's adjustment to the Headliners' size created the problem. In fact, Grupo sent a quality control engineer, Steve Watkins, to Milliken's manufacturing facility in South Carolina to inspect the Headliner manufacturing process to evaluate the cause of the problems. (Pl. Mem. Opp'n Mot. Dismiss Ex G (Steve Watkins 11/6/09 Email).) A transfer that merely shifts the balance of convenience is especially inappropriate in the case at bar because South Carolina has a substantial connection to the controversy such that the plaintiff's choice of forum should be given greater weight. Milliken & Co. v. F.T.C., 565 F. Supp. 511, 517 (D.S.C. 1983). Based on the foregoing, this factor does not weigh in favor of transfer.

In addition, Grupo argues that the Michigan forum selection clause and choice of law provision in the purchase orders weigh in favor of transfer of the case to Michigan. (Def. Mem. Supp. Mot. Dismiss 16-17.) The forum selection clause in the purchase orders provide that "[a]ny litigation between the Seller and Buyer relating to the goods or services or the terms of the purchase order shall be brought only in the United States District Court for the Eastern District of Michigan or in a state court located within the State of Michigan." (Id. Ex. A (Byanski Aff. Ex. 1 (Purchase Order)).) In contrast, Milliken submits that the Supplier Procedure Manual governs this action and contains a South Carolina forum selection clause, which weighs in favor of the instant suit remaining in this court. Milliken alleges that it amended the Supplier Procedure Manual adding the following provision:

> Notwithstanding anything to the contrary and in accordance with Milliken's price quote, all sales are exclusively subject and limited to the standard sales terms

posted at www.milliken.com/terms - any conflicting or additional terms in this
document will be attempted in good faith but are not binding.

(Pl. Mem. Opp'n Mot. Dismiss Ex. D (Supplier Procedure Manual).) The terms of the Supplier Procedure Manual "were incorporated by reference into any purchase order issued by Grupo . . . ." (Id. Ex. D (Supplier Procedure Manual).) Milliken's terms includes a South Carolina forum selection clause which states: "Buyer hereby irrevocably submits to the jurisdiction of the courts with [South Carolina] with respect to any jurisdiction." (Id. Ex. F (Milliken's Terms).) Further, Milliken's terms include a South Carolina choice of law provision that "[f]or domestic sales, the law of [South Carolina], without regard to its conflict of laws principles, shall govern this Contract and the rights and obligations of the parties hereunder." (Id. Ex. F (Milliken's Terms).)

As noted above, the presence of a forum selection clause is not dispositive but is a "significant" factor for consideration. However, in the case at bar, the parties have competing forum selection clauses. In the Supplier Procedure Manual, Milliken alleges that it incorporated by amendment its forum selection clause and that Grupo accepted Milliken's terms. The terms in the Supplier Procedure Manual are incorporated by reference in Grupo's purchase orders. Thus, Milliken argues that the South Carolina forum selection clause controls. However, Grupo relies on its forum selection clause contained in the purchase orders. Grupo alleges that Milliken never objected to the terms in the purchase orders and thus, "[t]he course of conduct established between the parties confirms that Grupo Antolin's General Purchasing Terms, not those of Milliken, control, making Michigan the proper forum for this case." (Def. Reply 5-6.) Under the facts of this case, the court finds that the competing forum selection clauses are not a controlling factor that weighs in favor of either forum. See, e.g., Powerscreen USA, LLC v. D & L Equip.,

<u>Inc.</u>, Civil Action No. 3:07CV-433-S, 2008 WL 2944994, at *3 (W.D. Ky. July 28, 2008) (unpublished).

The court has considered the factors under § 1404(a) and finds that Grupo has failed to meet its burden of proving that Michigan is a more convenient forum for the parties and witnesses in this case and that the interests of justice weigh in favor of transfer. Based on the foregoing, Milliken, as a resident of South Carolina, has an interest in resolving the dispute in its home district. In light of the absence of any other factors counseling in favor of transfer, Grupo has not shown that the plaintiff's choice of forum should be disregarded. Based upon the foregoing, Grupo's motion to transfer venue is denied.

It is therefore

**ORDERED** that Grupo's motion to dismiss or, in the alternative, motion to transfer venue, docket number 10, is denied.

**IT IS SO ORDERED.**

                                              s/Henry M. Herlong, Jr.
                                              Senior United States District Judge

Greenville, South Carolina
October 5, 2010